### BELL, et al v. STATE COMPTROLLER, et al.
No. 68-212.

Circuit Court, Leon County.

May 13, 1969.

174

Joseph C. Jacobs of Ervin, Pennington, Varn & Jacobs, Tallahassee, and William G. O'Neil of O'Neill & Trammell, Ocala, for plaintiffs.

Ronald C. LaFace and Larry Levy, Assistant Attorneys General, for defendants.

HUGH M. TAYLOR, Circuit Judge.

*Final judgment:* This case is now before the court on final hearing upon the pleadings, as amended, and the evidence taken before the court.

The law of the case has been, for the most part, settled in Burns v. Butscher, 187 So.2d 594, and Dickinson v. Bell, 214 So.2d 24.

The issues before the court are presented by the plaintiffs' claim that in some of the counties in the Central and Southern Florida Flood Control District in which they own pasture or grazing lands, there is a systematic and intentional assessment of lands of this class at a grossly higher value than the assessment of similar lands used for similar purposes and of similar taxable value in other counties in the district. If this be true, it necessarily follows that plaintiffs' lands are being taxed, at least for district purposes, in an unequal and discriminatory amount.

Plaintiffs have invoked the jurisdiction of this court to impel the comptroller to perform his duties under the tax statutes and particularly §§192.31 and 196.16, Florida Statutes.

In evaluating the evidence, it is necessary to bear in mind that the assessment of land for the purpose of ad valorem taxation is not an exact science; that even within a single county, parcels of land which in any general classification must be placed in the same class may differ substantially in value; that the evidence before the court consists almost entirely of average or approximate values of different types of agricultural land in the several counties composing the flood control district; that the judgment of different assessors as to the classes in which individual parcels of land should be placed will necessarily differ; that all assessors do not use exactly the same classifications; and that reasonable variations in judgment between assessors is unavoidable.

The task of the comptroller in reviewing tax assessments is not an easy one, and the court should not require that he demand exact mathematical equality in assessments as between counties. On the other hand, the comptroller should not ignore obvious and glaring inequality of assessments as between counties; and if he does, it is the duty of the courts to protect the rights of protesting taxpayers by requiring that the comptroller perform his clear legal duties.

Applying these principles to the assessments[1] of pasture or grazing lands within the flood control district, the court finds reasonably consistent assessments in the counties of Indian River, Lee, Hendry, Glades, Martin, St. Lucie, Okeechobee, Polk, Brevard, Highlands, Orange, and Volusia. As between some of these counties, there are differences probably greater than should exist, at least on a theoretical basis, but the court is not convinced from the evidence that as regards these counties standing alone there is such a clear abuse of discretion on the part of the comptroller in failing to take corrective measures as to justify judicial intervention.

The assessments in Seminole and Osceola counties are at a rate substantially different from those in the counties listed in the preceding paragraph, and this difference is so great that a very serious question is presented.

However, when we examine the assessments in Broward and Palm Beach counties, the differences are so great as to be shocking to the judicial conscience. No evidence before the court justifies, and no argument can sustain, valuation[2] of semi-improved pasture lands in most of the counties in the district at between $50 and $75 an acre and similar lands in Broward County at $400 per acre, and in Palm Beach County at $750 to $2,000 per acre; or the assessment in most of the counties of improved pasture lands at

---

1. The evidence relates primarily to the actual valuation of lands for 1968 taxes; but it also establishes that, unless required to change, the tax assessors of the various counties will use the same basis for assessing for 1969 taxes.

2. Of course grazing or pasture lands in Palm Beach and Broward counties have values for nonagricultural purposes which might cause the actual market values to equal or even exceed the assessed values herein discussed, and the lands in other counties might not have such values, but the local tax assessors, the comptroller, and this court are bound by §193.11, Florida Statutes, and the construing decisions of the Supreme Court. While there is no evidence on the subject, the court will assume until the contrary appears that public officers have performed their duties and that all agricultural lands have been properly classified under §193.201.

from $100 to $150 per acre and the assessment of improved pasture lands in Broward County at $900 and in Palm Beach County at $1,000 to $2,500. The evidence indicates that there are no pasture or grazing lands in Monroe County, and the amount of comparable lands in Dade County is negligible.

The evidence before the court does not establish, and it is not the function of this court to determine, the value of specific parcels of land or the specific value of different classes of land within the district. The evidence before the court does establish that the comptroller in previous years, and particularly in 1968, did not perform his duty under the statute to exercise "general supervision of the assessment and valuation of property . . . so that all property will be placed on the tax rolls and the valuation thereof will be uniform and equal."

The court cannot and will not close its eyes to the fact that at least some of the litigants now before the court sought in 1968 to require the performance by the comptroller of this legal duty, but their efforts failed because the comptroller exercised his legal right to take a fruitless interlocutory appeal and thus delayed the case until this court found it necessary to deny relief at that time because of the disruptive effect it would have had upon the finances of the counties effected. If effective relief is to be given to injured taxpayers without disastrous effects upon county governments, the judicial processes must begin early enough to permit the orderly assessment of all lands within the district in accordance with law and the levying of county taxes as well as district taxes based upon these assessments, all before the time for the payment of taxes.

The court cannot say that the assessments of pasture lands in some counties should be reduced, or those in some counties raised, or both, in order to produce both equality and just valuation. That is the duty of the comptroller. But the court can require the comptroller to perform his legal duty.

It is, therefore, ordered and adjudged that Honorable Fred O. Dickinson, Jr., as comptroller of the state of Florida, do forthwith make an official determination of the reasonable range of values of grazing lands consisting of natural pasture, semi-improved pasture, and improved pasture within the Central and Southern Flood Control District and within 45 days from the date of this judgment institute proceedings to require the proper assessment of such lands by the proper county tax assessor by (1) securing from each tax assessor written assurance that specific instructions to make such assessments will be obeyed, or (2) instituting and diligently prosecuting in the appropriate courts legal proceedings to require the

several local county tax assessors to make such assessments, or (3) recommending to the governor of Florida that the county tax assessors who refuse to make such written commitments be suspended from office, and that the comptroller do make return of his acts pursuant to this judgment each 45 days until the further order of this court.