187 So.2d 594 (1966)
Haydon BURNS, As Governor, et al., Etc., Appellants,
v.
William C. BUTSCHER, Jr., et Ux., et al., Appellees.
No. 35186.
Supreme Court of Florida.
June 8, 1966.
Earl Faircloth, Atty. Gen., Fred M. Burns, Asst. Atty. Gen., and Charles D. McClure, for appellants.
William G. O'Neill, Ocala, Robert M. Ervin and Joseph C. Jacobs of Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellees.
Thomas C. Britton, County Atty., and Stuart Simon, Asst. County Atty., amici curiae.
THOMAS, Justice
As early as 10 July 1942 we observed the requirement of Sec. 2 of Chapter 20722, Laws of Florida, Acts of 1941, that all property be assessed by tax assessors at full cash value was not an innovation since Sec. 905, C.G.L. 1927, contained a similar mandate. And we pointed out that the rate of taxation and the percentage of assessed valuation no longer so complemented each other that assessments of less than 100 per cent. would distribute the tax burden equally as long as the assessments were uniformly applied. Schleman, Tax Collector v. Connecticut General Life Ins. Co., 151 Fla. 96, 9 So.2d 197, Walter v. Schuler, infra. This was the inescapable conclusion because of the exemption of $5000. on homesteads. In the absence of these fixed exemptions, disparity in the relationship of assessed value to full cash value would not be so significant as long as the percentage of valuation was universally applied within taxation units. However, the only way now to escape the mischief that results from varied assessments is the valuation of all property at 100 per cent. of its value as the legislatures of the State for at least 97 years, since Chapter 1,713, Acts of 1869, have said must be done.
As late as 1965, in Walter v. Schuler, Fla., 176 So.2d 81, we held that assessments of less than 100% could not be tolerated and that `X' should be fixed by applying *595 the classic formula for establishing fair market value, namely the amount a purchaser under no stress to buy a given piece of property would pay a non-necessitous seller.
With this brief statement of the background of the problem of proper assessment we go to the briefs for the pivotal question immediately involved and to the lucid opinion of the chancellor for elaboration of the question and his treatment of it.
The Attorney General at the outset tells us the primary consideration is the construction of Sec. 192.31, Florida Statutes, F.S.A. Under it the assessors, and others, were admonished to use the forms and follow the instructions from time to time given them by the Comptroller. Furthermore the Comptroller was declared to have "general supervision of the assessment and valuation of property, under the supervision of the State Budget Commission, so that all property will be placed on the tax rolls and the valuation thereof will be uniform and equal, as required by the Constitution * * *." (Italics supplied.) We have italicized the part that will become most significant as we proceed. The following are provisions designed to standardize valuation within the State. The Comptroller with the approval of the Budget Commision is mandated to establish measurements of values, consistent with those fixed by law, and these standards are declared to be prima facie evidence of just valuation. Any assessor refusing to adhere to them assumes the burden of overcoming the presumption of their merit.
The section continues with details of the manner in which assessors shall be informed of regulations promulgated to advance the plan of uniformity, hence justness, in the assessments throughout the State.
The need for such procedure is manifest from the list of counties and respective assessments published by the Railroad Assessment Board for the year 1965 after it had caused a survey to be made. From this it appears that in eight counties assessments are made on the basis of 100 per cent. of valuation while the range is from that figure to 17.54 per cent. in a certain county. The eight counties deserve mention: Alachua, Baker, Bradford, Duval, Hendry, Orange, Palm Beach and Union. The rhetorical question emerges: How could it be said that an owner of property assessed at 17.54 per cent. of full cash value carries his share of the burden?
The Governor, through the Attorney General, seems to cast a shadow on Sec. 192.31, supra, supposedly because it empowers the Comptroller and the State Budget Commission, composed of Constitutional officers to override the tax assessors who are also Constitutional officers, or to put it in the words of the Assistant Attorney General used in the oral argument, to "ride herd" on the tax assessors. The reference pertinent to this position is Sec. 6 of Article VIII providing for the office of tax assessor where we find the mandate that the legislature shall provide for the election of tax assessors. But we cannot stop there and infer that because the assessors are created in the Constitution their duties as Constitutional officers as they are "known at the common law cannot be taken away by the legislature" as the Attorney General suggests. In the first place the challenged section takes away no duties. In the very next sentence of Sec. 6 of Article VIII it is provided that "[t]heir [the Tax Assessor's] * * * duties * * * shall be prescribed by law." It does not stretch the meaning of this language to hold that the oppugned section falls neatly within the power vested in the legislature. There was merely an effort to control the manner in which the duties were to be performed and judging by the statistics previously given, there is much need for regulation. The exercise of the duty to establish *596 values, carte blanche, would bring strange results as indeed, has been the case. Exercise of unbridled discretion by 67 Tax Assessors without their being anchored to any master plan would result in the imbalance already so clearly indicated.
We do not construe the statute as an attempt at usurpation by the Comptroller and Budget Board of the duties of tax assessors or materially to interfere with their discretion in discharging their duties for as we said in the Walter case there is much room for the play of their judgment as they "receive, weigh and evaluate varying information * * * from different sources * * *."
We now, for the special attention of the 59 assessors who seem not to have brought assessable values up to 100 per cent. repeat from the Walter decision language we thought was clear: "It is apodictic that a percentage of `X' [the true assessable value] cannot be computed without first establishing `X' and the assessors upon reaching the first figure are enjoined not to proceed to the second."
By way of enforcement of the provisions that require the establishment of assessable values at the uniform figure of 100 per cent. the Comptroller is authorized to institute suits to secure obedience by officials of duties devolving upon them in relation to the tax laws and observance of pertinent regulations promulgated by the Comptroller. Sec. 196.16, Florida Statutes, F.S.A.
Moreover, the Comptroller is commanded to investigate the conduct of Tax Assessors and others in the execution of their duites in dealing with tangible personal property and to recommend to the Governor removal of such of them as wilfully fail properly to discharge the duties put upon them by the Constitution, Chapter 200, Florida Statutes, F.S.A., and regulations promulgated pursuant to it, and to furnish the Governor evidence justifying removal.
In his brief the Attorney General prefaces his discussion with the statement that "the primary purpose of this litigation is to obtain a construction of § 192.31, F.S., concerning the powers, duties and obligations of the State Comptroller, under the supervision of the State Budget Commission, in connection with the assessment and collection of ad valorem taxes against real and tangible personal property in Florida, as well as to determine the powers, duties and obligations of the said Comptroller under said section and § 196.16, F.S., if any, in connection with taxation and in obtaining uniformity and equality of taxation as between the taxpayers of the several counties, as well as throughout the state." And in conclusion he submits that Sec. 192.31 to the extent it may be interpreted as providing for complete re-evaluation and re-assessment of a tax roll prepared by an assessor of taxes violates Sec. 6 of Article VIII of the Constitution, F.S.A. and invades the rights, powers and duties of assessors secured to them by that part of the Constitution.
We are aware of no infirmity in Sec. 192.31 or, for that matter, in the whole plan which obviously was designed to effectuate uniformity and equality in taxation amongst all the counties of the State. But it is not restricted to such widespread application. There are instances where lack of uniformity and inequality become glaring because focused upon a relatively small and concentrated area. Such an illustration is Central and Southern Florida Flood Control District composed of 18 counties. It requires little imagination to comprehend the mischief that would result there if the county tax assessors could fix the assessable values willy-nilly, say from 17.54 per cent. up. And we discover no encroachment upon the ultimate power of the circuit courts with reference to taxes and assessments which they may exercise under Sec. 6(3) of Article V of the Constitution.
*597 We find no fault with the decision of the court below and it is affirmed.
THORNAL, C.J., and ROBERTS, DREW, O'CONNELL, CALDWELL and HOBSON (Retired), JJ., concur.