278 So.2d 272 (1973)
The DISTRICT SCHOOL BOARD OF LEE COUNTY, Florida, et al., Appellants,
v.
Reubin O'D. ASKEW, As Governor of the State of Florida, et al., Appellees.
No. 43102.
Supreme Court of Florida.
April 4, 1973.
Rehearing Denied June 20, 1973.
*273 James E. Messer and M. Stephen Turner of Thompson, Wadsworth & Messer, Tallahassee, for appellants.
Robert L. Shevin, Atty. Gen., Winifred L. Wentworth, Asst. Atty. Gen., William G. O'Neill, of O'Neill & Bishop, Ocala, Charles E. Miner, Jr., Tallahassee and James T. Schoenbrod, Miami, for Appellee.
ADKINS, Justice.
This is a direct appeal from the Circuit Court for Leon County which held Fla. Stat. § 236.07, F.S.A., to be constitutional. We have jurisdiction pursuant to Fla. Const. art. V, § 3(b)(1), F.S.A.
The educational program of Florida is funded, in part, through the Minimum Foundation Program, wherein the minimum amount of money required per instructional unit for each School District is determined according to formulae prepared by the State. The State then assumes the duty to allocate that amount necessary to provide the minimum foundation, less the amount required to be contributed by the county. The minimum financial effort traditionally required of the county has been based on county tax assessment rolls multiplied *274 by a required level of millage, which, under the law controlling in the case sub judice (Fla. Stat. § 236.07(8)(a), F.S.A.), was six mills. The Minimum Foundation Program, by thus providing for a uniform expenditure per teaching unit throughout the State regardless of the tax base of the various counties, meets the constitutional requirement of a uniform system of free public schools. Fla. Const., art. IX, § 1, F.S.A.
A problem arises, however, if one or more of the county tax assessors fails to provide a just valuation of taxable property in his county as is required by Fla. Const., art. VII, § 4, F.S.A. Just valuation has been interpreted by this Court to be legally synonymous with fair market value (Walter v. Schuler, 176 So.2d 81 (Fla. 1965)), and it has been held that assessments of a level below 100% cannot be tolerated. Burns v. Butscher, 187 So.2d 594 (Fla. 1966). If a tax assessor fails to meet the duties of his office and underassesses, the State has been forced to pay its fair share plus a portion of the burden which should have been borne by the county, in effect forcing the State into the position of a county taxpayer. Thus, the county has benefited from the unconstitutional behavior of its tax assessor.
Fla. Stat. Ch. 195, F.S.A., provides machinery by which the State can challenge, in Court, wrongdoing by county tax assessors, and also provides authority for the Department of Revenue to regulate the procedures by which assessments are made.
In the area of school financing, however, the Legislature has chosen to ignore the findings of the tax assessors completely, and to rely on a ratio study prepared by the Auditor-General to determine allocation of State education funds. Fla. Stat. § 236.07(8), F.S.A. It is this procedure which is challenged in the case sub judice.
Fla. Stat. § 236.07(8) (a), F.S.A., provides in part:
"The amount that each district shall provide toward the cost of the minimum foundation program shall be six mills in 1972-1973, and seven mills in 1973-1974 and each year thereafter, of tax on ninety percent of the one hundred percent nonexempt assessed valuation of that district for the preceding calendar year. The level of assessment of property for each district shall be determined by the agency authorized by law."
With this provision, there can be no argument. However, the subsection continues:
"After consultation with the department of revenue, the auditor general is directed to determine for each school district the ratio of the assessment roll compared to full value and shall certify the results of such study to the department of education. In making this certification, the auditor general shall consider and be guided by the statutory standards to which the assessors are required to adhere. This certification shall be made no later than May 1 of each year. The school district share of the minimum foundation program cost shall be computed at a level of assessment equal to ninety percent of the one hundred percent nonexempt assessed property valuation of the district for the preceding calendar year."
This method of allocation is further provided for in Fla. Stat. § 236.07(9), F.S.A. The ratio study is also challenged as it might be made to apply to a determination of whether or not counties are fully assessed for the allocation of other state funds pursuant to Fla. Stat. § 195.101 (1), F.S.A. However, the primary issue is whether a ratio study prepared by the Auditor-General may be used to determine the accuracy and correctness of an assessment by a county tax assessor.
Appellants are seven school districts of the State which have lost State education *275 funds under the procedures outlined above, and the county commission of Martin County challenging the possible loss of other State funds under Fla. Stat. § 195.101(1), F.S.A.
Many issues are raised, and many attacks are waged on the validity of the ratio study performed by the office of the Auditor-General. However, it is unnecessary for this Court to consider the details of the study, as we hold the utilization of a ratio study performed by the State Auditor-General to override the assessment rolls of the duly-elected, constitutionally-provided county tax assessors (Fla. Const., art. VIII, § 1(d), F.S.A.) to be constitutionally unacceptable.
The entire thrust of the judgment of the trial court in the case sub judice is premised on the finding that:
"[T]his is not a case of overturning the judgments of the tax assessors and the presumptions of their correctness for tax assessing purposes. It is a case of whether or not the findings of the Auditor-General, also clothed with a presumption of correctness, are to be invalidated."
If that were indeed the case, the statute and procedures provided for therein would stand on sounder ground, but, as the trial judge pointed out,
"The legislature has chosen, for its own reasons, to distrust the appraisals of the tax assessors and to rely upon the Auditor-General to produce the appraisals of real estate to be controlling in the distribution of state monies to the districts and counties."
To apply to the school districts a different standard than that set by the county tax assessors is to overrule the tax assessors. To distrust the assessments and to replace them with assessments from another source for whatever purpose is, again, to overrule. Thus, we must consider by what methods the State can, in fact, overrule the tax assessors, and whether or not the case sub judice represents the application of such a method.
As noted above, county tax assessors are constitutionally created officers who are mandated by the Constitution and by this Court to assess all property at a 100% valuation level. As constitutional officers, the actions of the tax assessors are clothed with a presumption of correctness (Powell v. Kelly, 223 So.2d 305 (Fla. 1969)), which
"[M]ust be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment." Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317, p. 318 (1929).
In Burns v. Butscher, supra, we recognized that the Court has the power and authority to control the manner in which the duties of the tax assessors are performed. Under Fla. Stat. § 195.032, F.S.A., the Department of Revenue is authorized to establish standard measures of value to be used by the tax assessors, and the statute further provides that these standards shall be deemed prima facie to be measures of just valuation.
The long-standing test for validity of a tax assessment is, and has been, whether or not the assessor has proceeded in accordance with and substantially complied with the requirements of law in good faith. Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926 (1916), and Powell v. Kelly, supra. We recognized in Schleman v. Connecticut General Life Ins. Co., 151 Fla. 96, 9 So.2d 197 (1942),
"[T]he difficulty of fixing with certainty the full cash value of property and the great variance in values set by persons of like experience and judgment, all making estimates conscientiously." (p. 200) See also Powell v. Kelly, supra.

We recognize, as we must, that the State is not a mere taxpayer or private citizen *276 and that an action between the State and a county "is a contest between the sovereign and its child." Weaver v. Heidtman, 245 So.2d 295, p. 296 (Fla.App.1st, 1971). However, this does not act to magically dispel the presumption of correctness with which the actions of the tax assessors are clothed. In Burns v. Butscher, supra, we approved the controls placed on the assessors by the State, but only after noting that the controls were not
"[A]n attempt at usurpation by the Comptroller and Budget Board of the duties of tax assessors or materially to interfere with their discretion in discharging their duties." 187 So.2d 594, p. 596.
The present plan, which allows for reliance on the assessments of the Auditor-General in total disregard for the assessments of the county assessors as approved by the Boards of Tax Adjustment and certified to the Department of Revenue (Fla. Stat. § 193.114(5), F.S.A.) is an attempt to usurp the duty of the assessor. This cannot stand.
When the State has accepted the certification of the assessments on the one hand, it cannot be allowed to overturn the assessments on the other hand merely because another State official comes to a different conclusion in the exercise of his judgment than did the tax assessor in exercising his discretion.
The school districts of the State, like the citizens, have a right to rely on the findings of their duly-elected assessors where the findings have been reviewed and certified by the reviewing body.
The proper method for challenging the validity of an assessment is through the circuit court (Fla. Stat. § 194.171, F.S.A.), and the State has the power, through the Department of Revenue, to bring such an action. Fla. Stat. § 195.092, F.S.A.
The tax assessor is, of necessity, provided with great discretion (Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla.App.2d, 1961)), due to the difficulty in fixing property values with certainty. Schleman v. Connecticut General Life Ins. Co., supra, and Powell v. Kelly, supra. The discretion is of such a quality that
"[A] mere showing that the two assessments are different does not make one of them necessarily invalid; especially in view of the fact that these two tax rolls were prepared by different assessors." Keith Investments, Inc. v. James, 220 So.2d 695, p. 697 (Fla.App.4th, 1969).
The proper test for measuring the validity of a tax assessor's action is set out in detail in Powell v. Kelly, supra:
"While the assessor is accorded a range of discretion in determining valuations for the purpose of taxation when the officer proceeds in accordance with and substantially complies with the requirement of law designated to ascertain such values, yet, if the steps required to be taken in making valuations are not in fact and in good faith actually taken, and the valuations are shown to be essentially unjust or unequal abstractly or relatively, the assessment is invalid." 223 So.2d 305, pp. 307-308.
This is the test which the status of tax assessor as a constitutional officer requires. The fact that the party challenging the assessments is the State cannot be justification for changing the test, nor for ignoring the proper procedure for challenging the actions of the tax assessor, through the courts.
In summary, we recognize the county tax assessor as a constitutional officer, elected to determine the value of property within his county. As such, he is under a constitutional duty to assess all property at full value. Fla. Const., art. VII, § 4, F.S.A., and Walter v. Schuler, *277 supra. We have held that the Legislature has the power to regulate the method of assessments, but not to interfere with the assessor's discretion. Burns v. Butscher, supra. There is great difficulty in precisely fixing property values so that the assessor is provided great leeway in his assessments, so long as he follows in good faith the requirements of law. Powell v. Kelly, supra. So long as the law is followed, the assessments are presumed valid until the presumption is overcome by sufficient proof to defeat every reasonable hypothesis of a valid assessment. Powell v. Kelly, supra.
The State has the authority and power to challenge an assessment through circuit court (Fla. Stat. § 194.171, F.S.A.), and has a duty to the taxpayers of the State to do so in cases such as is presented here where underassessment in a county requires the State to pick up a portion of the county's fair share of the cost of education. However, we hold that the State has no power to ignore the presumption of correctness attendant to the official assessments. To rely on the findings of the Auditor-General, as required by Fla. Stat. § 236.07(8), F.S.A., ignoring the official assessments, is to negate the discretion granted to the assessors, the discretion necessary to the job, attendant to all educated estimates, and uniformly recognized in the opinions of this Court. We conclude that a finding by the Auditor-General different from that reached by a county tax assessor is, therefore, insufficient to override the official assessment in the absence of a showing that the official assessment represented a departure from the requirements of law and not merely the differences of opinion to be expected when experts approach the subjective business of assessing property.
Accordingly, the judgment of the trial court is reversed and the cause is remanded with instructions to enter an order in favor of appellants holding Fla. Stat. § 236.07(8), F.S.A., to be unconstitutional insofar as it allows for a ratio study by the Auditor-General to overrule the certified findings of the county tax assessors.
It is so ordered.
CARLTON, C.J., ROBERTS, McCAIN and DEKLE, JJ., and SPECTOR, District Court Judge, concur.
BOYD, J., dissents with opinion.
BOYD, Justice (dissenting).
I must dissent. Wherever possible, it is the duty of Courts to give legislation a construction which will render it constitutional. The legislation being challenged results from an effort on the part of the Legislature to enforce the obligation of local tax assessors to make a just and lawful assessment throughout Florida on a uniform basis. It is unfair and unlawful to permit assessors in some parts of the State to give low assessments on property, thus requiring the citizens of other parts of the State to make up the deficiencies in education in the offending counties.
If the legislation should be construed to give to the auditor general an arbitrary and unlimited authority to override local assessments without judicial review, the law could not stand under the Constitutions. It is my opinion that a proper interpretation of the law would require the auditor general to file his objections immediately after the assessments are made by the local assessors, and that any controversy be litigated by Circuit Courts before final approval of the assessment figures by the State. With this construction, the law would clearly be constitutional.
For the above reasons, I respectfully dissent.