# MIAMI ATLANTIC DEVELOPMENT CORPORATION v. TAX ASSESSOR, et al.

No. 73-30553

Circuit Court, Dade County

September 6, 1974

Smith, Mandler, Smith, Parker & Werner, Miami Beach, for the plaintiff.

Stuart L. Simon, County Attorney, Jon I. Gordon, Assistant County Attorney, for the defendants.

FRANCIS J. CHRISTIE, Circuit Judge.

*Final summary judgment:* This cause came on to be heard upon defendants' motion to dismiss the complaint, defendants' motion for judgment on the pleadings, defendants' motion for summary judgment, and plaintiff's motion for summary judgment, and the court after hearing argument of counsel, reviewing the record, and otherwise being fully apprised of the premises, finds as follows —

The plaintiff, Miami Atlantic Development Corporation, on behalf of itself and other persons allegedly similarly situated, sued Metropolitan Dade County, its tax collector and its tax assessor. The plaintiff alleged in its complaint that the tax assessor improperly assessed the subject properties. The properties in question are commonly known as the Crystal House Condominium located at 5055 Collins Avenue, Miami Beach.

The defendants moved to dismiss the complaint on the following grounds — (1) that the complaint failed to allege a class action; (2) that the complaint failed to comply with the provisions of §95.08, Florida Statutes; and (3) that it affirmatively appeared in paragraph 7 of the complaint that the subject properties were a condominium on January 1, 1973. See Rule 1.110(d) of the Rules of Civil Procedure.

Thereafter, the parties pursued discovery by way of written interrogatories and requests for admissions. Defendants' motion to

dismiss originally set for hearing on January 11, 1974, was continued until March 5, 1974. In the interim, the plaintiff moved for summary judgment accompanied by an affidavit of Ernest Mandel, the president and member of the board of directors of the plaintiff corporation. Both defendants' motion to dismiss and the plaintiff's motion for summary judgment were partially argued on March 5, 1974. At the commencement of the hearing, counsel for defendants orally moved for summary judgment without objection being made thereto by counsel for the plaintiff. The court, at the end of the allotted time set for the hearing on the above motions, requested both counsel to submit memorandums of law in support of their respective positions and, in addition, the court advised the parties that it would by special appointment set aside sufficient time to allow counsel to fully argue the merits of their respective motions.

Subsequent to the hearing on March 5, 1974, the defendants answered the complaint and raised certain affirmative defenses. Thereupon, defendants moved for a judgment on the pleadings.

Pursuant to the court's order of March 7, 1974 the above motions were specially set for argument on April 23, 1974. The court by its order of April 25, 1974, in light of the novel issues of law involved, again specially set the parties' respective motions for additional argument on August 26, 1974.

Thereafter, the parties entered into a stipulation dated July 19, 1974, which permitted the plaintiff to file an amended complaint wherein it joined the board of tax adjustment as a necessary party defendant and in which it alleged compliance with F.S. §95.08. Pursuant to the stipulation, the parties agreed that the filing of the amended complaint would not preclude the court from disposing of the pending motions set for hearing on August 26, 1974. The filing of the amended complaint, however, does make it unnecessary for the court to consider the specific issues with regard to §95.08 and joinder of the board of tax adjustment as a necessary party defendant. In all other respects, the parties agreed that the court, in its discretion, would be permitted to dispose of the remaining issues.

The remaining issues before the court are —

*I. Whether the tax assessor erred in separately assessing the individual condominium parcels rather than in assessing the entire structure as one unit.*

*A. Whether a condominium is created upon the act of recording the declaration of condominium.*

*B. Whether a condominium is created upon execution of the declaration of condominium.*

*C. Whether the plaintiff is estopped, based upon the "clean hands" doctrine, from asserting that the subject properties had not been submitted to condominium ownership.*

*II. Whether the plaintiff has by substantial, competent evidence overcome the tax assessor's presumption of correctness in regard to the actual assessed value of the subject properties.*

*III. Whether the complaint alleges ultimate facts sufficient to properly plead a class action.*

With regard to the first issue above, the court will first discuss the effect of submitting the subject property to a condominium. The tax assessor properly assessed separately the individual units of the subject property on January 1, 1973, in light of the fact that the structure had been submitted to condominium ownership on December 29, 1972. Under Florida statutes January 1st of each tax year is the date upon which property is to be valued. See F.S. §192.042(1) (1971); Ammerman v. Markham, 222 So.2d 423 (Fla. 1969). In regard to the case at bar, the crucial date is January 1, 1973.

The need for a specific statute expressly authorizing the condominium form of ownership came about as a result of the reluctance of money sources to finance common law created condominiums. See McCaughan, *The Florida Condominium Act Applied,* 17 U. Fla. L. Rev. 1, 2 (1964)[1] (hereafter referred to as "McCaughan"). The basic purpose of the act was to recognize ownership of a part of a building as real property. See F.S. §711.04(1) (1971).

> "Condominium is not a new estate or a different kind of property. It is merely a new form of ownership, the essential features of which are separate ownership of units of improvements and common ownership of the land and other common elements — undivided shares of the latter being appurtenant to the units." McCaughan, supra, at 8.

The prime advantage of condominium ownership, in regard to ad valorem tax liability, is the insulation of the unit owner from the liabilities of other owners.

> "If a condominium were taxed as a whole, as is a corporate cooperative, the failure of one unit owner to pay his

---

1. The court in Vinik v. Taylor, 270 So.2d 413, 417 (4th D.C.A. Fla. 1972) stated in regard to the Honorable Russell McCaughan that he was "one of the authors of Chapter 711, supra, and [he is] one of the acknowledged authorities in the field of condominium law, . . ."

share of the taxes would either jeopardize the title of the entire project or force the other owners to pay the share of the defaulting owner." McCaughan at 12.

The only direct effect on ad valorem taxation that a change from individual ownership of an entire building to a condominium ownership permitting separate ownership of portions of a building as real property is that by submitting the property to condominium ownership, the separate condominium parcels are each individually assessed rather than the whole structure being assessed as one unit. In addition, the assessed taxes against the individual condominium units constitute a lien only on the individual condominium parcel rather than on the entire property. [2] §711.19(1) (1971) states —

*Separate taxation of condominium parcels; survival of declaration after tax sale.* —

(1) Property taxes and special assessments assessed by municipalities, counties and other taxing authorities shall be assessed against and collected on the condominium parcels and not upon the condominium property as a whole. Each condominium parcel shall be separately assessed for ad valorem taxes and special assessments as a single parcel. The taxes and special assessments levied against each condominium parcel shall constitute a lien only upon such condominium parcel so assessed and upon no other portion of the condominium property.

In light of the plaintiff's actions by submitting the subject property to condominium ownership prior to January 1, 1973, the ad valorem taxes due on the individual parcels could be prorated between the developer and the purchasers in accord with subsection 6 of the Agreement of Purchase and Sale which is attached to the affidavit of Ernest Mandel as Exhibit 1. Therefore, with regard to the effect of submitting the subject property to condominium form of ownership, the property tax liability becomes altered by insulating each individual unit owner from the tax liability of other owners. The change in the nature of the ownership has no direct bearing on the actual assessed *value per se* of the subject property.

---

2. In regard to the tax lien which would be imposed on the entire property had it not been submitted to condominium ownership, §197.011 (1971) states in part —

*Lien of taxes.* — All taxes imposed pursuant to the constitution and laws of this state shall be a first lien, superior to all other liens on any property against which such taxes have been assessed, which shall continue in full force and effect until discharged by payment.

Having discussed the effect of submitting the subject property to condominium ownership, the court will now explore how a condominium is created. §711.08(1) states in part —

> Creation of condominiums; contents of declaration. —
>
> (1) A condominium may be created on lands owned in fee simple or held under a lease having a term initially in excess of ninety-eight years by recording in the public records of the county wherein the land to be included is located a declaration executed with the formalities of a deed by all persons having title of record to such land or equitable ownership under such a leasehold interest as specified herein, which declaration shall contain or provide for the following matters:
>
> (Emphasis added.)

By its plain words, the legislature has enumerated how a condominium must be created pursuant to Chapter 711 of the statutes. Presumably, a common law condominium may also be created — but if one utilizes Chapter 711, one must adhere to the statutory criteria.

The plaintiff alleged in paragraph 7 of its complaint that it filed its condominium documents in the public records of Dade County on December 29, 1972.[3] Included in its condominium documents is its "Declaration of Condominium". Further, subsection 1 of the "Declaration of Condominium" found on page 1 of the condominium documents (hereafter referred to as "documents") states that the subject condominium was created pursuant to Chapter 711 of the statutes.[4] §711.08 and the plaintiff's own declarations clearly evidence that the subject condominium was created pursuant to Chapter 711 by the recording of the "Declaration of Condominium" on December 29, 1972 — two days prior to January 1, 1973, the relevant taxing date.[5]

---

3. Paragraph 6 of the affidavit of Ernest Mandel with attached exhibits likewise supports this allegation. Moreover, attached Exhibit B to Mr. Mandel's affidavit reflects that the declaration of condominium was *executed* on December 29, 1972.

4. Paragraph 7 of the complaint incorporates the documents as part of the complaint.

5. *Accord,* Ackerman v. Spring Lake of Broward County, Inc., 260 So.2d 264 (4th D.C.A. Fla. 1972); see amendments of the declaration become effective upon recordation, §711.10(1) (1971); modifications of the by-laws become effective upon recordation, §711.11(1) (1971); and termination of the condominium becomes effective upon recordation, see also §711.16(1 (1971).

The court finds that the subject property was converted to a condominium *by the recording of the declaration of condominium* on December 29, 1972.

The plaintiff submits that the permissive word "may" found in §711.08 titled *Creation of condominiums; contents of declaration,* supra, showed that the legislature did not intend to have the act of recording the declaration of condominium create condominium ownership. With this proposition the court cannot agree. The permissive word "may" was utilized in order not to jeopardize existing common law created condominiums. See McCaughan, supra, at 27. Once the plaintiff elected to create a condominium under Chapter 711 it was obliged to and did follow the requirements set forth in that statute. See also Attorney General's Opinion 70-58. A condominium is generally created upon recordation of the declaration. See Patrick J. Rohan, *Condominium Law and Practice,* §7.01(1) (1973).

In addition, the plaintiff argues that it had not submitted the subject property to condominium ownership by January 1, 1973 because the joinder of the mortgagee was not executed until after that date. The joinder of the mortgagee is unnecessary in order to create a condominium and therefore the plaintiff's argument lacks merit. See McCaughan, supra, at 27, 28. The *creation* of the subject condominium was unaffected by the joinder of mortgagee.

Also, the plaintiff argues that it allegedly possessed the right to terminate the condominium prior to March 21, 1973 — which authority was never exercised — and therefore, until that date, the condominium did not exist.[6] The unexercised authority to terminate a condominium is not a valid basis to argue that the condominium was not created. As an analogy simply because there is authority to dissolve a corporation does not mean that on the date of creation the corporation did not exist. Simply because partners retain the right to terminate the partnership does not mean that the partnership never existed from the date the partnership agreement was executed. And, simply because the plaintiff asserts that under certain circumstances it allegedly had the right to terminate the condominium does not mean that the condominium was not created.

---

6. Article XIII, *Termination,* of the declaration of condominium, attached to plaintiff's complaint as Exhibit A recites that only by the unanimous vote of the "unit owners" and all institutional mortgagees, can the condominium be terminated. A "unit owner" is defined in Article I (B) (12) of the declaration of condominium as ". . . the owner of a condominium unit." If the plaintiff was a "unit owner", then by definition, a condominium must have existed for otherwise, there would be nothing to terminate. If the plaintiff was not a "unit owner" then it did not possess the right to terminate.

Further, the plaintiff asserts that the condominium did not exist on January 1, 1973 because neither the plaintiff nor its agents were prepared to close or to consummate the contracted sales of the individual units. See paragraph 11 (c) of affidavit of Ernest Mandel. The plaintiff does admit that it entered into various contracts during the later part of 1972 with prospective purchasers for the condominium units. See paragraph 5 of affidavit of Ernest Mandel. Although the sales were not yet closed, the plaintiff was certainly acting as though it was a condominium. In fact, §711.24 (1971) as amended by Chapter 72-201, required, prior to the "initial sale or *offering* for sale of any condominium parcel" (emphasis added), that the plaintiff make full disclosure to the prospective buyers of a number of documents, including copies of the declaration of condominium, articles of incorporation, and by-laws of the association. The plaintiff's contention that the condominium did not exist until it had closed its first sale on March 22, 1973 is illogical and not in accord with the spirit of full disclosure. By analogy, a corporation comes into existence on the date of creation whether or not on that particular day it is prepared to conduct business. See F.S. §608.04 (1971).

Therefore, in light of the above, the court finds that the plaintiff submitted the subject property to condominium ownership on December 29, 1972 — the date of recordation of the declaration of condominium.

In the event that recordation of the declaration of condominium did not create the condominium, then the date the declaration of condominium was *executed* created the condominium. The declaration was executed December 29, 1972 — the same day that it was recorded.

§711.03(10) (1971) provides —

> *Definitions.* — As used in this law:
>
> (10) Declaration, or declaration of condominium, means *the instrument or instruments by which a condominium is created,* and such instrument or instruments as they are from time to time amended. (Emphasis added.)

The theory that the date of execution of the declaration of condominium creates the condominium is in accord with the idea of common law condominiums being created by contract. See Mc-Caughan, *supra,* at 2. In any event, the dates of recordation and of execution of the declaration of condominium are identical — December 29, 1972, two days prior to January 1, 1973.

The case at bar is an equity suit. As such, the plaintiff is estopped from now asserting that it did not submit the subject property to condominium ownership. See 32 Fla. Jur., *Taxpayers' actions,* §18 (1960). The plaintiff had made the following declarations —

SUBMISSION STATEMENT AND DEFINITIONS

A. MIAMI ATLANTIC DEVELOPMENT CORP., a Florida corporation (hereinafter sometimes referred to as the "Developer"), hereby states and declares that it is the owner and holder of the fee simple title in and to the real property hereinafter described in Article "II" hereof and *hereby declares said real property to be Condominium Property and does hereby submit the same to Condominium ownership pursuant to Chapter 711, Florida Statutes, the Condominium Act,* as amended (hereinafter referred to as "the Condominium Act"), upon the terms, conditions, restrictions, reservations and limitations hereinafter set forth. (Emphasis added.)     *     *     *

The purchaser understands that to make the property a condominium, the seller is authorized to file with the Clerk of the Circuit Court of Dade County, Florida, a Declaration of Condominium together with the necessary exhibits.[7]     *     *     *

Miami Atlantic Development Corporation, a Florida corporation, the developer of that certain property *submitted to condominium ownership by declaration of condominium* of 5055 Collins — a condominium, recorded in Official Records Book 8056, page 738 of the Public Records of Dade County, Florida, prior to the closing of the sale of the first condominium unit under said declaration hereby amends the said declaration of condominium as follows: (Emphasis added.)

All of the foregoing statements clearly indicate that the plaintiff represented that it was a condominium on January 1, 1973, and it is now estopped to assert otherwise. Otherwise, the filing of the declaration of condominium in the public records of Dade County would constitute a material misrepresentation to all persons for whom the recording constituted actual or constructive notice. It should be noted that the plaintiff's "Submission Statement" of its declaration of condominium unconditionally submitted the subject property to a condominium.

Finally, the court finds that there is no genuine material issue of fact with regard to the submission of the subject property to a condominium and further, the court finds that the subject property was a condominium on January 1, 1973.

With regard to the second issue dealing with the correctness of the actual assessed value of the subject property, the tax assessor's actions are presumed correct. Dean v. Palm Beach Mall, Inc., 297 So.2d 298 (Fla. 1974); City National Bank of Miami v. Blake, 257 So.2d 264 (3d D.C.A. Fla. 1972); District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973).

---

7. The plaintiff by the above statement represented to the prospective purchasers that the condominium would be created by filing its declaration of condominium.

As above mentioned, the nature of the ownership, whether by condominium or otherwise, does not directly affect the assessed value of the property. §193.011, Florida Statutes, sets forth the criteria by which the tax assessor should and did assess the subject property. The nature of the ownership of the property is not a requisite statutory factor to be considered by the assessor in determining the actual assessed value of the subject properties. The tax assessor in his answers to the interrogatories has stated that he considered the enumerated factors set forth in the above cited statute. See plaintiff's interrogatory no. 3.

"Just valuation" is synonymous with "fair market value". Southern Bell T & T Co. v. Dade, 275 So.2d 4 (Fla. 1973); Walter v. Schuler, 176 So.2d 81 (Fla. 1965). As the Supreme Court stated in District School Bd. of Lee County v. Askew, 278 So.2d 272 (Fla. 1973), at pages 275 and 276 —

> . . .. county tax assessors are constitutionally created officers who are mandated by the constitution and by this court to assess all property at a 100% valuation level. As constitutional officers, the actions of the tax assessors are clothed with a presumption of correctness (Powell v. Kelly, 223 So.2d 305 (Fla. 1969)), which
>
>> "[M]ust be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment." Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317, p. 318 (1929).
>
> \* \* \*
>
> The tax assessor is, of necessity, provided with great discretion (Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. App. 2d, 1961)), due to the difficulty in fixing property values with certainty. Schleman v. Connecticut General Life Ins. Co., supra., and Powell v. Kelly, supra. The discretion is of such a quality that
>
>> "[A] mere showing that the two assessments are different does not make one of them necessarily invalid; especially in view of the fact that these two tax rolls were prepared by different assessors." Keith Investments, Inc. v. James, 220 So.2d 695, p. 697 (Fla. App. 4th, 1969).

What has the plaintiff affirmatively alleged and what has it proven, in order to overcome the tax assessor's presumption of correctness? The plaintiff alleged in paragraph 9 of its complaint that the assessor erroneously assessed the subject properties as a condominium rather than as an apartment house. Moreover, the plaintiff alleged generally in paragraph 10 of its complaint that the assessment was illegal and that the assessor failed to assess the properties pursuant to the provisions of §193.011. The assessor has

stated in his answer to plaintiff's interrogatory no. 3 that in determining the actual assessed value of the subject properties, he considered the factors enumerated in §193.011. Absent substantial competent evidence that the assessor failed to properly consider the eight criteria enumerated in §193.011, the assessments are presumed correct and must be sustained. Town of Bay Harbor Island v. Lancelot Associates, 243 So.2d 437 (3d D.C.A. Fla. 1971). Moreover, the complaint fails to allege a "complete case for equitable relief by excluding every reasonable hypothesis of a legal assessment . . ." Dean v. Palm Beach Mall, Inc., 297 So.2d 298, 300 (Fla. 1974).

Despite the allegations in the complaint, what has the plaintiff submitted in support of its motion for summary judgment by way of substantial competent evidence to overcome the assessor's presumption of correctness? Mr. Mandel, president of the plaintiff corporation, has expressed his opinion that the 1973 assessment should be identical to the 1972 assessment. Of course, a mere difference of opinion, assuming Mr. Mandel was qualified to express one, of itself is not sufficient to overcome the assessor's presumption of correctness. District School Bd. of Lee County v. Askew, supra.

The plaintiff, in effect, asserts that in 1972 the assessor arrived at the assessed value of the property by utilizing the "rent value" — or what is commonly referred to as the "income approach". The plaintiff further asserts that the assessor, in 1973, utilized the "sell-out" or "comparable sales approach" in arriving at a higher assessed value than in the previous years. In a nutshell, the plaintiff objects to the change in the assessing approach employed by the assessor from 1972 to 1973.

The 1972 assessment is completely irrelevant and inadmissible in regard to challenging the propriety of the subject assessment. Escambia Chemical Corp. v. Fisher, 277 So.2d 307 (1st D.C.A. Fla. 1973); Overstreet v. Brickell Lum Corp. 262 So.2d 707 (3d D.C.A. Fla. 1972); Metropolitan Dade County v. Tropical Park, 251 So.2d 551 (3d D.C.A. Fla. 1971). Therefore, that portion of Mr. Mandel's affidavit regarding the 1972 assessment is irrelevant and not competent evidence which this court should consider.

Looking at the record in a light most favorable to the plaintiff, Mr. Mandel's affidavit merely asserts that the income approach is a better method of assessment than the comparable sales approach. It must be remembered that in order to overcome the assessor's presumption of correctness, the plaintiff must affirmatively prove by substantial competent evidence that the assessed value of the property cannot be supported — "excluding every reasonable hypothesis of a legal assessment". District School Bd. of Lee County v. Askew, supra, at 275.

The three recognized "approaches" for a legal assessment are — (1) the cost approach; (2) the comparative sales approach (sellout); and (3) the income or economic approach. Aeronautical Communications Equipment, Inc. v. Metropolitan Dade County, 219 So.2d 101 (3d D.C.A. Fla. 1969). The plaintiff has not carried its burden in overcoming the assessor's presumption of correctness. The plaintiff has merely asserted that one approach is more valid than another — without proving that the assessment cannot be sustained employing any of the three recognized legal approaches to assessment.

The plaintiff has failed to submit substantial competent evidence which, if believed, would affirmatively prove that the assessment of the subject properties cannot be sustained employing any of the above legally recognized methods of assessment. The plaintiff has failed to affirmatively prove by substantial competent evidence that the assessor failed to substantially comply with the requirements of law designated to ascertain the assessed value of the subject properties listed in §193.011.

Therefore, the court finds that there appears no genuine material issue of fact with regard to the method employed by the tax assessor in arriving at the actual assessed values of the subject properties and accordingly, the assessments are presumed valid. The fact that the cumulative assessed value of the individual condominium units in 1973 exceeds the 1972 assessed value of the subject property does not generate a material issue of fact.

With regard to whether the complaint can be maintained as a class action, the court holds that it cannot.

The Supreme Court of Florida in Harrell v. Oil and Chemical Corporation, 287 So.2d 291 (1973), has recently enumerated the necessary allegations which must be properly pled in order to maintain a class action. They are —

(1) show the *necessity* for bringing the action as a class suit;

(2) show plaintiff's *right* to represent the class;

(3) allege that plaintiff brought suit on behalf of himself and all others *similarly situated;*

(4) allege the existence of a class, described with some degree of *certainty;*

(5) allege that the members of the class were so *numerous* as to make it impracticable to bring them all before the court;

(6) make it clear that plaintiff adequately *represents* the class; and

(7) show that the *interests* of the plaintiff were *co-extensive* with the interests of the other members of the class.

The plaintiff has failed to plead the *necessity* for bringing a class action. The purpose of a class action is to reduce the burdens of litigation when there is a common issue of law so that there can be expeditious adjudication on the merits which would eliminate a multiplicity of law suits. Suits challenging tax assessments have historically been considered individual as opposed to class actions. Otherwise, the plaintiff might as well represent all condominiums on Miami Beach which were assessed for the first time as a condominium in 1973. The burdens of discovery alone in regard to each condominium parcel would most surely tax the energies of this court and of counsel. The plaintiff has failed to allege facts which show a *need* for bringing a class action.

Additionally, the plaintiff has failed to plead his right to represent the class. The court in Helmly v. Rogers House Condominium, Inc., 234 So.2d 128 (4th D.C.A. Fla. 1970), held that even a condominium association had no right to bring a class action. Certainly, the plaintiff has no more right to maintain this action on behalf of all the condominium owners than does any other condominium owner in the Crystal House.

The plaintiff has alleged that the other members of the class which it purports to represent are *similarly situated*. Florida Statutes, §194.171, as amended by Chapter 72-239, requires as follows —

"Before a taxpayer may bring an action to contest a tax assessment, he shall pay to the collector the amount of the tax which he admits in good faith to be owing. The collector shall issue a receipt for the payment, and the taxpayer shall file the receipt with his complaint."

Although the plaintiff has attached to his complaint a copy of the requisite collector's receipt, the other members of the class have not done likewise. Prior to paying the taxes and acquiring a receipt, this court simply does not have jurisdiction to entertain a tax suit on behalf of the entire class.

Additionally, and what may be most important, the interest of the plaintiff may not be coextensive with the other members of the class. In particular, a similar situation arose in the case of Osceola v. Wylie, 78 So.2d 700 (Fla. 1955). In that case, the defendant

corporation subdivided approximately 394 acres of land into one acre units and sold these units for $1,000 each to numerous persons, each of whom signed similar contracts of sale and lease agreements. The plaintiffs brought the action against the defendant on behalf of themselves and all those members of the class who had purchased land pursuant to the sales contract. The plaintiffs alleged that the defendant had breached its promise to maintain certain shrubbery and landscaping. The complaint alleged that the defendants had neglected their covenant to maintain the property and that the plaintiffs were suing for an accounting as well as for other relief. Mr. Justice Drew after stating that in order to maintain a class action, the complaint must plead facts showing the *right* and the *necessity* for the action, stated that the complaint in question did not allege the prerequisite for a class action in that the individual members of the class acquired their acreage under separate contracts, and that the individual members of the class might elect a different remedy other than that selected by the nominal plaintiff. The court further stated, at page 703 —

> ". . . it may well be that some of the purchasers have used the alleged losses occasioned by the actions of the sellers to their advantage in their income tax returns over a long period of time. The litigation could terminate in substantial liability for costs. Moreover, there may be many purchasers who are satisfied with their bargains whether the trees had ever been planted or, if planted, regardless of the costs of maintenance. There may be differences in every one of the many contracts involved of a nature that would result in the legal rights of the parties, in each instance being different."

As in the case at bar, the members of the alleged class purchased their condominiums under separate contracts and certain of the members may already have taken advantage of certain federal tax deductions arising out of the ad valorem taxes in question.

For the above reasons, the complaint is dismissed as a class action.

In passing, the court notes that the complaint fails to allege a cause of action for intentional tax discrimination nor does the record reveal any material issue of fact in this regard. The assessor is presumed to have acted correctly and in good faith. With this there is no material issue of fact.

Therefore, in light of the above, it is ordered and adjudged as follows — (1) Defendants' motions are granted. (2) Plaintiff's motion is denied. (3) The temporary injunction issued March 26, 1974, is dissolved and the plaintiff shall take nothing by its claim and shall go hence without day.