353 So.2d 834 (1977)
The SCHOOL BOARD OF ESCAMBIA COUNTY, Florida, Appellant,
v.
The STATE of Florida and Joe Oldmixon, Supervisor of Elections for Escambia County, Florida, Appellees,
The Escambia Education Association, Intervenor.
No. 50648.
Supreme Court of Florida.
December 8, 1977.
*835 Louis F. Ray, Jr., Pensacola, for appellant.
C.S. Williams, Jr., Asst. State Atty., Pensacola, for appellees.
Richard H. Frank and John J. Chamblee, Jr., of the Law Offices of Richard H. Frank, Tampa, for intervenor.
SUNDBERG, Justice.
This appeal challenges the constitutionality of Ch. 76-356, Laws of Florida (the Act), a special Act passed by the 1976 Florida Legislature pertaining to certain aspects of the administration of schools in Escambia County, Florida. Specifically, the Act provides for: (i) employment by the School Board of the Escambia County School District of the Superintendent of Schools, as opposed to his election; (ii) increase in the membership of the School Board of the Escambia County School District from five members to seven members, the two additional members to be elected at large; (iii) establishment of a monthly salary not to exceed $200 and per diem and mileage for members of the School Board of the Escambia County School District, with a savings clause for members serving on the effective date of this provision; (iv) election of members of the School Board of the Escambia County School District by nonpartisan election; and (v) provision for a referendum as to each of the above-stated provisions by the electors of the Escambia County School District, to be called and held by the School Board of the Escambia County School District at a special election prior to July 6, 1976. The Act also provides that the required special election be paid for by the Escambia County School District, such expenditure of funds being therein declared a proper school district expense. Section 5 of the Act enunciated the four separate propositions encompassed within the law as they were to appear on the ballot.
Prior to the election, the School Board of Escambia County, Florida, appellant, filed a complaint for declaratory judgment and injunctive relief in the Circuit Court for Escambia County, Florida, seeking, inter alia, to enjoin the holding of the referendum election. No action was taken with respect to the complaint prior to the scheduled election date. Accordingly, the referendum election was held, resulting in the voters' preference that: (i) the superintendent be elected; (ii) the membership of the School Board be expanded from five to seven members; (iii) the salaries of board members be reduced to $200 per month; and (iv) the election of board members be nonpartisan.
Subsequent to the election, appellant's complaint came on for final hearing before the circuit court. In his final judgment entered July 9, 1976, the circuit judge recited that the only remaining issues involved the validity of Sections 2, 3, and 4 of the Act. The final judgment then: (i) formally denied the prayer for injunctive relief due to the holding of the election and dismissed the Supervisor of Elections as a party to the proceedings; (ii) declared that Section 2 of the Act, providing for enlargement of the school board membership from five to seven members, was consistent with Article IX, Section 4, Florida Constitution, and Section 230.04, Florida Statutes (1975), and hence valid; (iii) declared that Section 3 of the Act, providing for reduction of a school board member's salary to $200 monthly, was not violative of Article III, Section 11(a)(21), Florida Constitution, because Section 145.16(2), Florida Statutes (1975), "does not include school board members in the list of county officials for whom special laws fixing compensation are prohibited"; and (iv) declared Section 4 of the Act unconstitutional because the legislature may not, by special act, provide for nonpartisan elections *836 of school board members as Article III, Section 11(a)(1), Florida Constitution, requires that such action be accomplished by general law.
Appellant filed this appeal, asserting that the trial court erred in holding Sections 2 and 3 of the Act constitutional. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution. In its complaint and in the brief filed in this Court, appellant asserts the constitutional invalidity of Section 5 of the Act, providing for a referendum at the cost of the school board. This ground was not assigned as error and, therefore, is not properly before this Court.
The issues raised by appellant are: (i) whether Section 2 of Ch. 76-356, Laws of Florida, violates Article IX, Section 1 of the Florida Constitution; (ii) whether Section 2 of the Act violates Article IX, Section 4(b) of the Florida Constitution; and (iii) whether Section 3 of the Act violates Article III, Section 11(a)(1) of the Florida Constitution, and Section 145.16(1), Florida Statutes (1975).
Article IX, Section 1, Florida Constitution, provides:
Adequate provision shall be made by law for a uniform system of free public schools and for the establishment, maintenance and operation of institutions of higher learning and other public education programs that the needs of the people may require.
Appellant recognizes that Article IX, Section 4(a), Florida Constitution, expressly permits school boards in each school district to be composed of five or more members as provided by law. Nonetheless, it contended that to permit the legislature to select one school district and, by special or local law, to provide a different number of school board members than is provided by general law for the school boards of all other counties in the state, abuses the declaration in Article IX, Section 1, Florida Constitution, that there shall be "a uniform system of free public schools." In support of this contention, appellant cites Section 230.061, Florida Statutes (1975), which provides that "[f]or the purpose of nominating and electing school board members, each district shall be divided into five district school board member residence areas, which shall be numbered one to five, ... [placing] in each district, as nearly as practicable, the same number of qualified electors." Appellant argues that provision in Section 2 of the Act for two at-large members obviously denigrates this provision of general law. Appellee State of Florida and intervenor, The Escambia Education Association, respond that appellant's assertion overlooks both Section 230.04, Florida Statutes (1975), and Article IX, Section 4(a), Florida Constitution. Both provisions state that there shall be a school board composed of five or more members in each school district
The crux of the issue, then, is whether the constitutional requirement for a uniform system of free public schools prohibits a disparity in the number of school board members from district to district throughout the State.
There is a dearth of authority construing the significance of the phrase "uniform system of free public schools," as appears in Article IX, Section 1 of the Florida Constitution. Our research discloses only four cases dealing with that provision. In the first, State v. Holbrook, 129 Fla. 241, 176 So. 99 (1937), this Court dealt with Article XII, Section 1 of the Constitution of 1885, the forerunner of Article IX, Section 1. Article XII, Section I, provided that "[t]he Legislature shall provide for a uniform system of public free schools, and shall provide for the liberal maintenance of the same." In Holbrook, the Court determined that a special act which established tenure of employment for teachers in Orange County, Florida, did not violate the uniform system requirement. The Court so held even though the law directly affected the authority of the school district trustees and the county board of public instruction in Orange County with respect to nomination, appointment, and employment of teachers in that county. The special act limited the trustees and board in Orange County in employment matters, whereas similar officials in all other counties were not so limited. Nonetheless, the act was upheld.
*837 State v. Henderson, 137 Fla. 666, 188 So. 351 (1939), construed the 1885 constitutional provision to mean "that a system of public free schools, as distinguished from the authorized state educational institutions, shall be established upon principles that are of uniform operation throughout the State... ." (Emphasis supplied) 188 So. at 352. The holding of this case dealt with application of the homestead exemption to the school tax levied by a Special Tax School District. It was concluded that the tax was not an assessment for special benefits within the meaning of the homestead provision and, therefore, homesteads were exempt from such taxes. This was so because the tax was levied to support the establishment and liberal maintenance of a "uniform system to promote education and good citizenship." Id. at 354.
In State v. Board of Public Instruction of Pasco County, 176 So.2d 337 (Fla. 1965), this Court upheld the constitutionality of a special act creating a special school taxing district within Pasco County, Florida, against an attack that it violated the provisions of the 1885 forerunner of Article IX, Section 1, Florida Constitution. In so doing, the Court said:
Chapter 63-1766 only seeks to create a tax area so that bonds can be issued to make improvements to the system of schools in the rapidly growing area. Thus, the act cannot be said to affect the uniformity of the system of schools. The counties and school districts are school governing bodies which provide for the uniform system of public schools. The same system of school government will obtain, although it is hoped more effectively with improved facilities provided for by the statute. See State ex rel. Glover v. Holbrook, 129 Fla. 241, 176 So. 99 (1937).
176 So.2d at 338.
The latest reference to the uniform free school system provision of our Constitution was in District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973). In Askew, we dealt with the tax ratio study of the auditor-general authorized by Section 236.07(8), Florida Statutes (1973), in determining required local effort for school financing under the Minimum Foundation Fund. Speaking for the Court, Justice Adkins stated:
The Minimum Foundation Program, by thus providing for a uniform expenditure per teaching unit throughout the State regardless of the tax base of the various counties, meets the constitutional requirement of a uniform system of free public schools. Fla. Const., art. IX, § 1, F.S.A. 278 So.2d at 274.
However, the Court went on to strike down the tax ratio study device as an unconstitutional means of determining the local effort factor for the Minimum Foundation Program formula.
The foregoing cases advise us of variations which do not violate the uniform system provision of Article IX, Section 1, Florida Constitution. However, they are not particularly instructive as to which variations would run afoul of the constitutional directive. Nonetheless, with these precedents in mind and based upon reference to other constitutional, statutory and definitional provisions, as well as policy considerations, we are of the opinion that Section 2 of Ch. 76-356, Laws of Florida, does not constitute the sort of nonuniformity proscribed by Article IX, Section 1.
It is apparent from Article IX, Section 4(a), Florida Constitution, that by a vote of the electors of two or more contiguous counties, those counties may combine into one school district. Hence, the uniformity of system called for by Article IX, Section 1, cannot dictate that each county have the same number of school board members, as asserted by appellant. Also, as previously noted, that article of the Constitution expressly provides that each school district shall have a board composed of five or more members. Section 230.04, Florida Statutes (1975), mandates only that the school board in each district be composed of not less than five members. Section 230.061, Florida Statutes (1975), by providing for election of a school board member from each of five districts, is not in derogation of Section *838 230.04 and does not preclude members in excess of five, who are to be elected at large from within the school district.
Furthermore, the dictionary definition of the term "system" leads to the conclusion that Article IX, Section 1, Florida Constitution, does not require that the school board in each county be composed of an identical number of members. Webster's Third New International Dictionary (unabr. 1960), provides, inter alia, the following definition of "system":
A complex unity formed of many often diverse parts subject to a common plan or serving a common purpose. (Emphasis supplied)

Id. at 2322.
By definition, then, a uniform system results when the constituent parts, although unequal in number, operate subject to a common plan or serve a common purpose.
The diverse nature and demographics of the population of our state likewise militates against the notion that the school board in each school district must be composed of the same number of individuals. In order that the total population in highly urbanized areas of our state, with its sometimes diverse cultural makeup, be properly represented in public school affairs, it may be highly desirable to have a school board in excess of five members. To the same extent, several contiguous rural, nonpopulous counties in the state may be better served by a single board with five members. Just as there need not be uniformity of physical plant and curriculum from county to county because their requirements differ, there is no compelling reason for school boards of identical size from county to county. Consequently, we conclude that the provision for a uniform system of free public schools embraces the notion that although equal pupil funding treatment such as the Minimum Foundation Program and coordinated effort and direction supplied by the State Board of Education are essential, identity in size of the constituent school boards is not.
Appellant maintains that Section 2 of the Act constitutes an attempt by the legislature to "pack" the Escambia County School Board. This, it asserts, is an unwarranted intrusion by the legislature into the local affairs of the school district in violation of Article IX, Section 1, and Article IX, Section 4(b),[1] Florida Constitution. This sort of argument was disposed of in State v. Holbrook, supra:
Of course, with regard to the wisdom and policy of this special act we have nothing to do. Counsel for the relator contends that the primary purpose of the act is to eliminate, in so far as possible, the influence of politics in the conduct of the public schools of Orange County; and counsel quotes from the Wisconsin case of State v. Levitan, 181 Wis. 326, 193 N.W. 499, 500 wherein it is said, concerning legislation of this kind, that:
"A certain measure of economic independence should be the reward of one who labors loyally and successfully in a profession or other field of employment. The prevailing salaries of teachers have not been sufficient to accomplish this result. Because of the discouraging consequences resulting to our educational system from the brief tenure of service on the part of those whom the state has educated for the work, there has been and is a growing sentiment that the teaching profession must be made more attractive by rewards of a material nature to induce a longer tenure of service."
While all this may be true, we must repeat that we are not here concerned with the wisdom or policy of this statute. It may be all that counsel for relator contends that it is. That was a matter for the Legislature to determine. We are only concerned with the question as to whether or not the statute here under review constitutes such a clear violation of the Constitution as would require this *839 court to hold it invalid. As the majority of the court are of the opinion that the statute is not shown by the respondents to be unconstitutional beyond all reasonable doubt, the validity of the statute should be upheld.
176 So. at 103.
The political motivations of the legislature, if any, in enacting Ch. 76-356, Laws of Florida, are not a proper matter of inquiry for this Court. We are limited to measuring the Act against the dictates of the Constitution. If it is not found wanting in this regard, then our inquiry is at an end. However, we would note that by its terms the Act provided for a local referendum and, at such election, the electors in the local school district approved the increased board membership by a majority vote.
Appellant's last attack on the Act centers upon Section 3, which reduces the salary of school board members to $200 per month. This provision is alleged to violate Article III, Section 11(a)(1), Florida Constitution,[2] as well as Section 145.16(1), Florida Statutes (1975).[3] Appellant argues that because Section 3 of the Act contemplates modification of the compensation of school board members, there is a derivative effect upon the filing fee for the election of such officers. This results because the filing fee is measured by a percentage of the annual salary of the office. Consequently, contends appellant, Section 3 of Ch. 76-356 is a special law "pertaining to election ... of officers... ." It is apparent to us that any such effect upon the election of school board members is so incidental and tenuous as to not be cognizable by the prohibition of Article III, Section 11(a)(1), Florida Constitution. The main purpose of the Act is to reduce the salaries of school board members. See Wilson v. Hillsborough County Aviation Authority, 138 So.2d 65 (Fla. 1962); State v. Holbrook, supra. State v. Newell, 85 So.2d 124 (Fla. 1956), is inapposite because it dealt with a "population act," the sole purpose of which was to alter the date for primary elections in counties encompassed within the population parameters of the law. The Newell Court construed the term "election" in the predecessor to Article III, Section 11(a)(1), to include primary as well as general elections and, accordingly, found the statutory provision invalid.
Appellant's attack premised on a violation of Section 145.16(1), Florida Statutes (1975), must also fail. Although that section expresses a legislative policy in favor of uniformity of salaries of county officials, Section 145.16(2), Florida Statutes (1975), enumerates specific county officials whose salaries are to be uniform. School board members are conspicuous by their absence from the county officers listed in Section 145.16(2), Florida Statutes (1975). Accordingly, under the doctrine of expressio unius est exclusio alterius, Section 145.16 offers no impediment to establishing by local law a different salary for those officers in Escambia County.
Likewise, Section 145.131(2), Florida Statutes (1975), which provides for establishing compensation of district school board members within salary ranges specified in Section 145.041, Florida Statutes (1975), cannot take precedence over the later special act here under consideration. See Sharer v. Hotel Corporation of America, 144 So.2d 813 (Fla. 1962); City of St. Petersburg v. Carter, 39 So.2d 804 (Fla. 1949). Furthermore, Section 145.131(2) is not insulated from modification by subsequent special act because it was not passed by the extraordinary legislative vote procedure required by Article III, Section 11(a)(21), Florida Constitution.
*840 Accordingly, the judgment of the trial court is affirmed.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND and KARL, JJ., concur.
HATCHETT, J., dissents.
NOTES
[1] Art. IX, § 4(b), Fla. Const.:

"(b) The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein. Two or more school districts may operate and finance joint educational programs."
[2] Art. III, § 11(a)(1), Fla. Const.:

"(a) There shall be no special law or general law of local application pertaining to:
(1) election, jurisdiction or duties of officers, except officers of municipalities, chartered counties, special districts or local governmental agencies."
[3] § 145.16(1), Fla. Stat. (1975):

"(1) The Legislature declares that the preservation of statewide uniformity of county officials' salaries is essential to the fulfillment of the legislative intent expressed in this chapter and intends by this section to prevent any laws which would allow officials in individual counties to be excepted from the uniform classification provided in this chapter."