345 So.2d 1055 (1976)
Murray SPOONER, Etc., et al., Appellants,
v.
Reubin O'D. ASKEW, Etc., et al., Appellees.
Reubin O'D. ASKEW, Etc., et al., Appellants,
v.
Ermine M. OWENBY, Etc., et al., Appellees.
Nos. 47189, 47190, 47368 and 47305.
Supreme Court of Florida.
December 22, 1976.
Rehearing Denied June 9, 1977.
*1056 Alton M. Towles, Gregory, Towles, Beatty & Hood, Tallahassee, for Murray Spooner, et al., appellants.
Robert L. Shevin, Atty. Gen., and Winifred L. Wentworth and Larry Levy, Asst. Attys. Gen., for Reubin O'D. Askew, et al.
Thomas G. Pelham, Brown, Smith, Young, Blue, Pelham & McDonnell, and John Shaw Curry, Harnett & Curry, Quincy, for Ermine M. Owenby, et al., appellees.
ENGLAND, Justice.
This cause is before us on direct appeal to review a final summary judgment entered by the Leon County Circuit Court in a class action affecting the 1973 real property tax roll of Gadsden County. By virtue of the action taken in that court[1] we have jurisdiction for review under Article V, Section 3(b)(1) of the Florida Constitution.
*1057 In February 1973, the Tax Assessor of Gadsden County received a letter from the Department of Revenue informing him that unless assessments of property in Gadsden County were substantially increased to achieve full valuation, the 1973 tax roll would be disapproved. The 1973 assessment roll later prepared by the Assessor produced a total assessment value on non-exempt real property of approximately 107 million dollars, more than an 85% increase over the 1972 assessment roll. The 1973 roll was then submitted to the executive director of the Department, who, pursuant to Sections 193.114(5) and (6), Florida Statutes (1973), approved it on October 19, 1973.
On October 30, 1973, pursuant to Section 194.032, Florida Statutes (1973), the Gadsden County Board of Tax Adjustment conducted a hearing at which it adopted resolutions which had the effect of reducing by 30% across-the-board all valuations placed on county properties by the Assessor. The basis for the Board's action was its conclusion that lands classified on the county's tax roll in all the various categories were assessed considerably higher than the lands of like classification and value on the tax rolls of certain neighboring counties.[2] The Department refused to follow the Board's recommendation, contending that the Board does not have authority to make a blanket reduction in the county's assessment roll, but rather is limited to making recommendations for reductions on an individual basis.[3]
A class action for declaratory, injunctive, and other relief relating to the 1973 tax assessment roll was filed by appellant Spooner and others on behalf of all of the ad valorem real property taxpayers of Gadsden County.[4] The complaint alleged numerous things, but in providing appellants with partial relief (a 12% reduction in assessed values) the trial court limited its reliance to the equal protection clauses of the federal and Florida Constitutions. As a part of its decision the trial court also upheld the Board's right to make blanket adjustments to all assessments in a county on the basis of comparative data from outside the county. We confine our review to these two issues, since they are dispositive of the controversy.
Article VII, Section 4 of the Florida Constitution commands that general law "shall secure a just valuation of all property for ad valorem taxation... ." The predecessor of this provision has been held to mean that property must be valued at 100% of fair market value.[5] This Court has never declared as invalid an entire tax roll *1058 which assesses property at 100% of full fair market value, as in this case, and it has never required a reevaluation of assessed real property values in one county based on comparative inequalities with assessed values in another county. In only two instances have we even held that an assessment level under 100% is constitutionally infirm, and in both the controversy involved an individual assessment of property in one county found to be wholly inconsistent with the general level of property assessments in the same county.[6]
The Constitution creates a class of public officials called tax assessors (now known as property appraisers)[7] whose duty it is to determine the fair value of all properties within county boundaries. There is an obvious tension between the exercise by these county officials of their constitutional responsibilities, on the one hand, and the development of statewide uniformity by state level officials on the other. The Legislature's 1973 decision to expand the tools made available to the Department for it to "ride herd"[8] on county officials sharpened pre-existing conflicts,[9] and undoubtedly the zeal of the Department in 1973 exacerbated these conditions.[10] It is in the context of the Department's beginning implementation of its new statutory duties that the trial court below found Gadsden County taxpayers as a class had been denied equal protection of the laws.
As regards the trial court's holding that county boards of tax adjustment may validly adjust assessments across-the-board, we find no statutory basis to support that conclusion. Before 1970 the authority of these boards in the assessment process was limited to a review of individual petitions presented by taxpayers aggrieved by their individual assessments.[11] All traces of statutory language arguably suggesting that the boards had authority to act without individual petitions were repealed in 1970.[12] When in 1973 the Legislature repealed Section 194.015(2), Florida Statutes (1971) (relating to the Board's powers) but neglected to identify that action in the title of the repealer bill,[13] it neither expanded nor contracted the board's authority to respond to individual petitions. It simply cleansed the statutes of surplus language. Under these circumstances, there was no title defect of the type proscribed by Article III, Section 6 of the Florida Constitution.[14] In finding to the contrary and ruling for the Board the trial court erred.
The trial court fashioned partial relief for Gadsden County taxpayers after *1059 finding that they were denied equal protection of the laws by having to pay 1973 real property taxes on the basis of assessments made at or near full fair market value, while for the same year the Department had approved tax rolls for other Florida counties which contain assessments below the constitutionally required "just valuation". We hold that equal protection of the laws was not abrogated in this case, and that the trial court erred in using as an evidentiary basis for that conclusion the data in this record which purports to reflect statewide or region-wide assessment levels. That data was incomplete, unreliable[15] and in any event formulated after the Department's and the Board's actions in this case.
There is no evidence in this record that the Gadsden County Tax Assessor failed to act on reliable information when he brought the 1972 tax roll up to 1973 level, and there is no reliable in-county evidence to support the Board's decision to slash all assessments by 30%. These evidentiary omissions are sufficient to conclude the controversy.[16] The Board's concerns for regional assessment parity are wholly irrelevant to its intra-county function in the scheme of the tax assessment process.[17] A taxpayer in Florida who is taxed at or under 100% of fair market value has never had standing to complain of an allegedly lower assessment level applied to taxpayers in another taxing unit. Neither Salter nor Southern Bell suggest otherwise. The problem in those cases, which the Court found both cognizable and remediable, came about "because the sworn official has not performed the duty requiring him to assess all property at its full cash value."[18] The taxpayers in this case complain because their sworn official performed his responsibility too well.
The mandate of "just valuation" derives from the Constitution. The requirement of statewide uniformity derives from statute.[19] The latter is more a goal than a compellable right, and it would be naive to have expected instant statewide uniformity (assuming it can ever be achieved) merely because that goal had been announced by law. The Legislature commendably desired to create uniformity of assessments in Florida, but its ability to do so must remain conditioned by the Constitution's directive that a class of county officers are assigned the primary responsibility to perform assessment functions. At best the legislative goal can be achieved only incrementally through cooperative efforts of the assessors *1060 and the Department, and by the development of procedures which will accommodate the responsibilities of both. That these procedures had not evolved to the point of flawless harmony in 1973 was not a basis to conclude that Gadsden County taxpayers were denied equal protection of the law under either the Florida or federal Constitutions.
The judgment of the trial court is reversed with directions to reinstate the 1973 tax roll as submitted by the Gadsden County Tax Assessor and approved by the Department.
OVERTON, C.J., and SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., concurs specially with an opinion.
ROBERTS (Retired), J., dissents with an opinion with which ADKINS, J., concurs.
BOYD, Justice, concurring specially.
The trial court determined that the tax assessor of Gadsden County, in response to direction from the Florida Department of Revenue, attempted to assess Gadsden County property at full market value and actually made assessments equal to 99% of the actual value of said property. In performing that service, the assessor was complying with the law of Florida as stated in McNayr v. State ex rel. DuPont Plaza Center Inc., 166 So.2d 142 (Fla. 1964). In McNayr the trial court found that the property in Dade County was being assessed at a rate of 50% of its full and just market value which resulted in a favored tax status for parcels enjoying homestead exemptions thereby requiring non-homestead property to bear a disproportionate tax burden. This Court agreed with the trial court that the discrimination could be remedied only by full valuation. Since that time the statutory and case law in compliance with constitutional standards of equality have attempted to require assessment of all property in Florida at full and just value. Many other definitions or formulas for assessment have been used by experts, but it boils down to the simple fact that under the law in this State all property is to be assessed at its true worth.
In this case the court found that the average assessment of property in the State for 1973 was 82% of full and just value, with the property in many counties assessed at values far below the 82% average. Rather than disapproving and modifying the 99% assessment attempted by the assessor in Gadsden County, the attention of the learned Circuit Judge should be directed toward acquiring full valuation in the other 66 counties of this State. This Court has jurisdiction of the parties to this litigation, including the Department of Revenue. It is my opinion that the Court should remand this cause to the trial court with directions to approve the work product of the Gadsden County tax assessor for the year 1973, inasmuch as it was done in direct compliance with standards announced in McNayr by this Court and direct the Director of the Department of Revenue to require similar compliance with the law by property appraisers in the other 66 counties. Jurisdiction should be retained until full compliance with requirements of law are met.
Property appraisal is not an exact science. Even among experts different criteria and different standards are used and rarely do they reach exactly the same conclusions on the same property. Nevertheless, it is obvious from the trial court's conclusion that the appraisers in many Florida counties have simply failed to comply with the law as interpreted by this Court, and it is my opinion that this Court holds the constitutional responsibility to require uniform assessment of all Florida property at full and just value.
ROBERTS (Retired), Justice, dissenting.
On February 18, 1975, setting out cogent reasoning in depth and detail, the trial court entered final judgment refunding to the taxpayers of Gadsden County 12% of the real property ad valorem taxes for the tax year 1973.
The historical background is set forth in the majority opinion. It appears to me to *1061 be a typical case for a court to balance the equities on equitable principles. The learned chancellor had before him mixed questions of law and fact. He took extensive testimony, heard extensive argument, and entered his decree. I have carefully perused the record and am unable to say he is in error, so, I, therefore, respectfully dissent.
ADKINS, J., concurs.
NOTES
[1] The trial court's order reads in relevant part:

"It is not necessary to consider the constitutionality of Section 195.096(4), Florida Statutes, 1973. It is not the constitutional requirement of Section 4, Article VII that general law regulations shall be prescribed to secure a just valuation of all property for ad valorem taxation that is the issue here. The problem is equal protection of the law. The claim of violation of due process of law requirements is not the critical issue and no ruling on that question need be explored. A finding of violation of the equality before the law and equal protection of the law provisions suffices to give the relief to which the court deems the evidence warrants... . The assessments of non-exempt real property of all classes in 1973 as made by the Assessor of Gadsden County and as approved by the Department are clearly shown to have been not less than 12% in excess of the levels of other comparable counties and of the state as a whole and to that extent have deprived the plaintiffs of equal protection of the law in violation of the 14th Amendment to the U.S. Constitution and of Section 2, Article I, Florida Constitution, 1968 [sic]."
[2] The Board compared select assessments in Washington, Holmes, Jackson, Wakulla, Madison and Taylor Counties. Within the same geographical distance from Gadsden County, but omitted from the Board's consideration, were Calhoun, Leon, Liberty, Bay, Gulf, Franklin and Jefferson Counties.
[3] The Board had submitted on appropriate Department forms its recommendation for 30% reductions to each of about 100 individual assessments. These were denied by the Department, however, on the ground that the Board had failed to make necessary, detailed investigations.
[4] As required by Section 194.181(2), Florida Statutes (1973), the Board and the Assessor were made defendants in the suit.
[5] Burns v. Butscher, 187 So.2d 594 (Fla. 1966); Walter v. Schuler, 176 So.2d 81 (Fla. 1965).
[6] Southern Bell Tel. & Tel. Co. v. Dade County, 275 So.2d 4 (Fla. 1973); Dade County v. Salter, 194 So.2d 587 (Fla. 1966). We recently explained the limitations of these cases in Deltona Corp. v. Bailey, 336 So.2d 1163, 1167-1168 (Fla. 1976).
[7] Art. VIII, § 1(d), Fla. Const. (1974).
[8] Burns v. Butscher, 187 So.2d 594, 595 (Fla. 1966).
[9] See District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973).
[10] The evidence in this case shows, as the trial court recited, that many but not all counties were contacted, with varying degrees of persistence, after the 1972 rolls were shown to be generally low and widely disparate. The consequences of this effort varied, but the Department's prodding produced a general increase in assessment levels in some counties greater than in Gadsden. Walton County increased its roll from 1972 to 1973 by 254%, and eleven other counties reflected increases greater than Gadsden's 85%.
[11] Ch. 70-243, Laws of Florida; Stiles v. Brown, 182 So.2d 612 (Fla. 1966).
[12] Ch. 70-243, Laws of Florida.
[13] See Ch. 73-172, § 22, Laws of Florida.
[14] The Legislature, of course, periodically passes non-substantive "reviser" bills which do not require title notice comparable to substantive law-making. While this bill was not in that category it has certain parallels in its repealing provisions. The trial court ruled, in effect, that an enumeration of statutes by section reference in the title of a bill automatically results in the invalidity (under Article III, Section 6) of a section or sections found in the body of the bill but not referenced in the title. We reject this interpretation. The issue in all title-defect cases is fair notice, not an accurate indexing. King Kole, Inc. v. Bryant, 178 So.2d 2 (Fla. 1965).
[15] The trial court itself described the studies in evidence as "highly controversial and like most superficial ratio studies are vastly unreliable." The court appeared to be influenced by the pressures put on the Assessor by the Department to get the tax roll up to a higher level. On this point, however, we find in the record only one sentence in one letter which can be said to be forceful. On February 12, 1973, the Department wrote to the tax assessor of Gadsden County stating that it "will not be in a position to recommend approval of your 1973 tax roll unless there is improvement toward full, just value." Identical "coercion" was applied to Taylor and Suwanee Counties by letters of even date, and like admonishments as to future action were communicated to at least another 17 counties during the same year. A conference between the Department and the assessor, at which additional pressure was said to have been applied, is not transcribed. We find nothing hostile or coercive in the action of the Department.
[16] District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973).
[17] It was improper for either the Board or the trial court to attempt a selective regional analysis for the county tax assessment function. Acknowledging that significant state tax revenues flow to the state's counties on the basis of county-wide assessment levels and tax receipts, it does not follow that counties with like characteristics of geography, climate, productivity or urbanization levels can be compared for these purposes. Variations between and among counties are inevitable.

"[A] mere showing that the two assessments are different does not make one of them necessarily invalid; especially in view of the fact that these two tax rolls were prepared by different assessors." Keith Investments, Inc. v. James, 220 So.2d 695, 697 (Fla. 4th DCA 1969), cited with approval in District School Board of Lee County v. Askew, n. 16 above at 276.
[18] Dade County v. Salter, 194 So.2d 587, 591 (Fla. 1966).
[19] Section 195.0012, Fla. Stat. (1973).