SHARP, Judge.
The Department of Revenue appeals from an order confirming as final the taxes levied in Flagler County against an interim assessment for the 1980 tax year. Pursuant to section 193.1145(8)(d), Florida Statutes (Supp.1980), of the Trim Bill, the order was based on a finding by the trial court that the implementation and administration of a reconciliation between the interim and final *936 tax rolls was “not in the best interest of the public.”[1] At issue are the meaning of “not in the best interest of the public,” and whether the trial court properly exercised its discretion in this case by allowing Fla-gler County a reprieve from assessing its real property at 100% or “just value”[2] for the 1980 tax year. We affirm.
In September 1980, the Flagler tax appraiser filed suit in the Circuit Court for Flagler to obtain authorization to use the interim roll to levy and collect taxes, pursuant to subsections 193.1145(1), (2) and (3), Florida Statutes (Supp.1980). Work on the final roll went slowly. The appraiser obtained extensions through May of 1981, apparently concurred in by the Department of Revenue. On May 29, 1981, the Department approved the final tax roll submitted to it by the appraiser. The interim roll was never submitted to the Department for approval, but apparently there was no statutory requirement that it had to be submitted.
All parties agreed that the interim roll did not appraise Flagler property at 100% of its value or at “just value.” The interim roll showed the total taxable value in the county was $276,489,039.00, and the final roll showed a total taxable value of $571,-405,344.00. The difference was close to fifty percent of the final roll, or $294,916,-305.00. About half of the properties would receive refunds and half would be assessed additional taxes, if reconcilation of the two rolls was required.
Rather than proceeding to reconcile the two rolls and sending out refunds and supplemental bills, the property appraiser filed suit in June of 1981 to have the interim roll judicially declared the final one. The local tax authorities presented testimony that the cost of the reconciliation process in Fla-gler would be very high and unusually difficult. Flagler is a small county, but it has a relatively high number of different parcels of property. It does not have a computer, and all of the billing and refunding would have to be done manually. The staff available to work on the reconciliation process was hard at work on the tax roll for 1981, and could not do both. The new roll, like the final roll, was at one hundred percent assessed valuation.
Witnesses testified further that Flagler lacked sufficient funds to do the reconciliation process. It would cost approximately $30,000.00, but the county only had on hand a $7,000.00 contingency fund. Although the refunds theoretically nearly equaled the new billings, the effort to collect taxes from the 1980 owners in 1981 would create difficulties and problems of collection. The county would have to borrow funds to pay the tax refunds, or take monies from the courthouse construction fund, which would halt the project. Finally, the Director of Finance testified that because of a situation peculiar only to Flagler County, the reconciliation would cause the School Board to lose $300,000.00 in state revenues, which could not be replaced by local taxes.
*937 The Department did not counter any of this testimony. Its witness stressed that the major effect of going from the interim to the final roll would be to shift the tax burden between types and classes of properties in Flager. Under the final roll, the homestead property would receive the greatest benefit because the larger homestead exemption would be available.[3]
The trial court considered these financial losses to Flagler and the costs of reconciliation.
The Court is concerned with the revenues of approximately 1.4 million dollars that may be diverted from Flagler County if reconciliation at this stage were to be required. The court has considered the loss of additional revenues and the actual loss of revenues to the County of Flagler. The Court has considered the impact of revenues on a statewide basis. The Court has weighed impact upon the economy and the orderly flow of Government functions in Flagler County.
In State Department of Revenue v. Adkinson, 409 So.2d 53 (Fla. 1st DCA 1982), our sister court reversed a trial court’s order confirming an interim tax roll as the final one for Walton County. The lower court relied on the cost of preparing a final tax roll and the absence of any financial gain to be obtained by the county for its finding of “not in the best interest of the public.” The appellate court said this was too limited a view of the term “best interest of the public”:
In essence, the court decided that “in the best interest of the public” means “in the best interest of the taxing authorities of Walton County.” Such a construction is too parochial.
Id. at 55.
The Adkinson court then proceeded to construe the “public interest” language as being tied grammatically and by proximity to the provisions in section 193.1145(8)(d) relating to bills and refunds. It thus construed “best interest of the public” as requiring a finding by the trial court that:
the amount to be supplementally billed and refunded is so insufficient that it would not be in the best interest of the taxpaying public to require preparation of a final roll, or to order reconciliation between the final and interim rolls, that is, the preparation or reconciliation would amount to a mere formality. (Emphasis added).
Id. at 56. Such a limited construction would make the additional provision of section 193.1145(8)(c), Florida Statutes (Supp. 1980), which prohibits refunds and additional bills of amounts less than $10.00, superfluous.
We agree with Adkinson that the mere cost and inconvenience of doing a final tax roll or reconciliation of a final and interim roll, is not enough to support a finding of “against the public interest.” If it were, none would ever be done.[4] However, in this case there were other additional factors peculiar to Flagler County which would cause genuine fiscal problems for the county government.
Adkinson would also deem these factors insufficient, because they relate to the welfare vel non of a single county rather than the state. Yet, we think the Legislature intended the court to consider the possible disruption of local government as the primary factor in applying the “against the public interest” waiver or exception to section 193.1145(8)(d). The first section of 193.1145(1), Florida Statutes (Supp.1980), states that the Legislature intends to achieve two competing goals:
that no undue restraint shall be placed on the ability of local government to finance its activities in a timely and orderly fashion, and, further, that just and uniform valuations for all parcels shall not be frustrated if the attainment of such valuations necessitates delaying a final determination of assessments beyond the normal 12 month period. (Emphasis added).
*938 The venue of the law suits is set at the seat of the local governments in section 193.-1145, and it must be that entity’s “public interest” which the local court is meant to balance and consider along with the just value cost.
The struggle to get all counties to assess at one hundred percent or “just value” has been a long one for both the Legislature and the courts.[5] The Trim Bill, of which section 193.1145 is a part, is a major step in that direction, and its reforms are welcome. But in drafting section 193.1145, the Legislature recognized the reality that many counties would take some time and special help in getting up to one hundred percent assessment, and it made provisions for that.[6] It also created an escape window, or special waiver exception for counties who in good faith sought but failed to achieve the required one hundred percent assessment, and for whom that step would cause too great a local government disruption and crisis. The statutory technique of taxing on the interim tax basis, or allowing a one year reprieve, was borrowed (we think) from Florida Supreme Court cases, which first created those remedies based on common law and equitable consideration.[7] We choose to read “not in the best interest of the public” in the context of those cases.
The lower court’s findings of “not in the public interest” are therefore supported by sufficient evidence in the record, and they are entitled to a presumption of correctness.[8] Accordingly, the order is
AFFIRMED.
COBB and FRANK D. UPCHURCH, JJ., concur.

. Section 193.1145(8)(d), Florida Statutes (Supp.1980), provides:
However, the court, upon a determination that the amount to be supplementally billed and refunded is insufficient to warrant a separate billing or that the length of time until the next regular issuance of ad valorem tax bills is similarly insufficient, may authorize the tax collector to withhold issuance of supplemental bills and refunds until issuance of the next year’s tax bills. At that time the amount due or the refund amount shall be added to or subtracted from the amount of current taxes due on each parcel, provided that the current tax and the prior year’s tax or refund shall be shown separately on the bill. Alternatively, at the option of the tax collector, separate bills and statements of refund may be issued. In addition, the court may find that the implementation and administration of a reconciliation between the interim and final rolls or that the preparation of a final roll is not in the best interest of the public. Upon so finding, the court may enter an order confirming taxes levied against interim assessments to be final for the year in question; property appraisal adjustment board petitions may then be filed with respect to interim assessments, and delinquent provisional taxes shall then be subject to the provisions of chapter 197. (Emphasis added).

. Art. VII, § 4, Fla.Const; § 193.011, Fla.Stat. (1979).

. Because the interim roll was not in compliance with just valuation, Flagler residents would not be eligible for the increased homestead exemption provided by Article VII, section 6(d), Florida Constitution.

. See Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978).

. See Spooner v. Askew, 345 So.2d 1055 (Fla.1976); Burns v. Butscher, 187 So.2d 594 (Fla.1966); Dickinson v. Geraci, 190 So.2d 368 (Fla.2d DCA 1966).

. In Spooner, 345 So.2d at 1059, the court held that the statutory mandate of statewide uniformity of “just valuation,” mandated by Article VII, Section 4, Florida Constitution, was a “goal” not “a compelling right.”
[I]t would be naive to have expected instant statewide uniformity (assuming it can ever be achieved) merely because the goal has been announced by law .... At best the legislative goal can be achieved only incrementally through cooperative efforts of the assessors and the Department, and by the development of procedures which will accommodate the responsibilities of both.
Id. at 1059-60.

. Slay v. Department of Revenue, 317 So.2d 744 (Fla.1975); McNayr v. State ex rel. Dupont Plaza Center, Inc., 166 So.2d 142 (Fla.1964); State ex rel. Glynn v. McNayr, 133 So.2d 312 (Fla.1961).

. Dickinson, 190 So.2d 368.