736 F.2d 1495
 LOUISVILLE AND NASHVILLE RAILROAD COMPANY, a Kentucky
Corporation, Plaintiff-Appellee,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, A State Agency, and
Randy Miller, Executive Director, Defendants-Appellants.
SEABOARD COASTLINE RAILROAD COMPANY, a Virginia Corporation,
Plaintiff-Appellee,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, A State Agency, and
Randy Miller, Executive Director, Defendants-Appellants.
 No. 83-3498.
 United States Court of Appeals,
Eleventh Circuit.
 July 24, 1984.
 
 Jeff Kielbasa, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellants.
 Kenneth R. Hart, DeBose Ausley, Tallahassee, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before FAY, VANCE and HATCHETT, Circuit Judges.
 VANCE, Circuit Judge:
 
 
 1
 In this case the Florida Department of Revenue (the Department) challenges a summary judgment entered in favor of taxpayer railroads in a suit alleging discriminatory ad valorem taxation in violation of section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4R Act).[1] That provision, codified at 49 U.S.C. Sec. 11503, bars a state or subdivision from assessing rail transportation property at a value that has a higher ratio to the true market value of such property than does the assessed value of other commercial and industrial property in the state or subdivision. Section 11503 further prohibits an assessment jurisdiction from levying or collecting any discriminatory portion of such ad valorem taxes.[2] Finding no reversible error, we affirm.
 
 I. BACKGROUND
 
 2
 The Louisville & Nashville Railroad and the Seaboard Coastline Railroad (the railroads) are interstate rail carriers owning real and tangible personal property in Florida. In 1981 the railroads filed suit against the Department challenging the 1980 assessments of their rail transportation property. The complaints alleged that the assessments were discriminatory under the 4R Act and requested declaratory relief as well as a refund of overpayments made on the basis of such illegal assessments.
 
 
 3
 In Florida, non-rail commercial and industrial property is appraised and assessed locally in the county of situs for purposes of ad valorem taxation. Rail property is appraised and assessed centrally by the Department. Under the Florida Constitution, property subject to ad valorem taxation must be assessed at just value.[3] Fla. Const. art. VII, Sec. 4 (1970, amended 1980). To arrive at just value, state law directs property appraisers to consider eight factors. Fla.Stat.Ann. Sec. 193.011. An appraiser need accord a given factor only such weight as the facts justify. Lanier v. Walt Disney World Co., 316 So.2d 59, 62 (4th Fla.Dist.Ct.App.1975).
 
 
 4
 The parties have stipulated that the Department assessed rail property for 1980 at 100% of just value. Individual counties assessed non-rail commercial and industrial property for the same year at 69.29% to 100% of just value, depending on the county. The Department recognizes that this disparity in assessed value establishes a section 11503 violation. The parties differ, however, as to the degree of discrimination and thus the measure of relief. The railroads argue that the just value calculation is itself inherently discriminatory due to the operation of Fla.Stat.Ann. Sec. 193.011(8). Under that provision appraisers must deduct incidental costs of sale, such as realtors' fees and the expense of unconventional financing, in arriving at just value. Id.[4] The railroads assert that, because of its discriminatory effect, criterion 8 should be ignored in determining true market value for purposes of measuring violations of the 4R Act.
 
 
 5
 In theory, the Department took account of sales costs in affixing the value of rail property. As a practical matter, however, the railroads received no economic benefit under criterion 8 because railroad property is rarely sold. Such benefits were instead reserved for owners of non-rail property. In 1980 criterion 8 was used to approve reductions of 13% to 21%, depending on the county, in the appraised value of non-rail property.[5] Had the 1980 appraisals ignored costs of sale, resulting in what the parties refer to as "full market value," non-rail property effectively would have been assessed at 58.89% to 86% of this value. Rail property would have been assessed at 100% of full market value.
 
 
 6
 In deciding the measure of relief, the district court granted summary judgment for the railroads. The court below concluded that criterion 8, while facially neutral, favors non-rail taxpayers to the detriment of the railroads in violation of section 11503. The court accordingly ruled that full market value rather than just value represents true market value for purposes of the 4R Act. This appeal followed.
 
 
 7
 II. THE FLORIDA SYSTEM OF AD VALOREM TAXATION
 
 
 8
 To ensure uniformity of assessments across the state, Florida appraisers are required to assess property at 100% of just value. Burns v. Butscher, 187 So.2d 594 (Fla.1966). The requirement of statewide uniformity is more a goal than a compellable right, Spooner v. Askew, 345 So.2d 1055, 1059 (Fla.1976). In Florida, as in other states, chronic undervaluation has long plagued the decentralized system of county property appraisal. See generally Hudson, Florida's Property Appraisers, 7 Nova L.Rev. 477 (1983); Wershow & Schwartz, Ad Valorem Assessments in Florida--Recent Developments, 36 U.Miami L.Rev. 67 (1981). In recent years the Florida legislature has moved to redress the problem by vesting the Department with supervisory authority over local appraisers. County property appraisers are required by statute to submit all assessment rolls to the Department for annual review. Fla.Stat.Ann. Sec. 193.114(5) (1971) (current version at Fla.Stat.Ann. Sec. 193.1142(1) (1982)). Rolls that deviate from just value risk Department disapproval. Id.; id. Sec. 195.002. In addition, the Department periodically conducts in-depth statistical studies to determine whether particular county appraisers persist in departing from the requirement of appraisal at just value. Id. Sec. 195.096. The in-depth reviews round out an arsenal of weapons available to monitor errant property appraisers. See Wershow & Schwartz, supra, at 80-81.
 
 
 9
 In an in-depth study, as in an annual review, the Department makes its own estimates of appraisals and compares its results to those reached by county officials. A sales assessment ratio survey is an essential part of any in-depth review. Such a survey compares the aggregate values assessed on a county-by-county basis for broad classes of property with actual sales prices of comparable property, as gleaned from public records.
 
 
 10
 The stipulations of full market value arrived at in this case report the results of the Department's sales assessment ratio survey for the 1980 tax year. To arrive at just value, the Department reduced these figures by 13% to 21% to allow for costs of sales under criterion 8. The effect of this across-the-board allowance was to reduce disparities between locally assessed values and prevailing market values computed under the Department's sales assessment ratio survey, resulting in Department approval of county rolls that assessed non-rail property at 13% to 21% below full market value.
 
 III. DISCRIMINATION UNDER THE 4R ACT
 
 11
 Under the 4R Act, discrimination is established and gauged by comparing the assessed value of affected property with its "true market value." 49 U.S.C. Sec. 11503(b)(1). The statute nowhere defines true market value. The legislative history, however, makes clear that Congress viewed true market value as a single standard against which assessed values would be compared. In a 1968 report accompanying S. 927, one of several predecessors to section 11503, the Senate Committee on Commerce stated:
 
 
 12
 In order to avoid any question as to the meaning of the phrase "true market value" as used in S. 927, the committee accepts the definition of this phrase as set forth in appendix B attached to this report. The committee intends by the phrase "true market value" the meaning set forth in appendix B.
 
 
 13
 S.Rep. No. 1483, 90th Cong., 2d Sess. 10 (1968). Appendix B provided, inter alia:
 
 
 14
 S. 927 does not suggest or require a State to change its assessment standards, assessment practices, or the assessments themselves. It merely provides a single standard against which all affected assessments must be measured in order to determine their relationship to each other. It is not a standard for determining value; it is a standard to which values that have already been determined must be compared.
 
 Id. at 22.[6]
 
 15
 The Department recognizes that section 11503 requires valuation of all commercial and industrial property according to a single standard. It contends, however, that the just value standard meets the test of uniformity. Employment of criterion 8 as one of eight factors in the just value formula does not detract from uniformity, in the view of the Department, since railroads generally do not sell their property and therefore do not incur costs of sale. According to the state, the cost of liquidation is just as relevant to a parcel's value as its location, size or use.
 
 
 16
 In evaluating these contentions, we begin by observing that the bar of section 11503 extends to de facto discrimination as well as de jure. Burlington Northern Railroad v. Lennen, 715 F.2d 494, 497 (10th Cir.1983); Clinchfield Railroad v. Lynch, 527 F.Supp. 784, 785 (E.D.N.C.1981), aff'd, 700 F.2d 126 (4th Cir.1983). De facto discrimination under the 4R Act can arise when a single rate of tax is applied to full true market value for rail property but to something less than true market value for non-rail property. See Atchison, Topeka & Santa Fe Railway v. Lennen, 552 F.Supp. 1031, 1039 (D.Kan.1982). Discriminatory intent is not a precondition to recovery once disparate impact is shown.
 
 
 17
 The Department has no quarrel with these propositions. It maintains, however, that no disparity in fact occurred because local properties bear substantial costs of sale that railroad properties do not have. The Department goes on to contend that it has and must have free rein to employ different appraisal techniques for different types of properties, depending on whether income, cost, or sale constitutes the most reliable source of the property's value.
 
 
 18
 These arguments broach delicate issues implicating the state's traditional authority to select methods of valuation. We need not decide whether the 4R Act prohibits the deduction of costs of sale that are actually incurred because in this instance the Department indiscriminately applied criterion 8 to reduce the appraised value of all non-rail commercial and industrial property, whether or not specific property was held for sale, whether or not a particular parcel was sold in the 1980 tax year, and whether or not brokerage fees were incurred for those parcels that were sold. By virtue of this blanket deduction the Department shielded county rolls from Department disapproval despite substantial undervaluations of non-rail property. The end result was to hand non-selling local property owners a windfall in the form of unchallenged lower property taxes that was not bestowed on railroads.
 
 
 19
 This allowance of unwarranted deductions under criterion 8 prevented resort to a single standard for the purpose of ascertaining and measuring discrimination. As such, employment of criterion 8 for purposes of Department oversight constituted a subtle but distinct form of discrimination in violation of the 4R Act. The district court was correct in concluding that full market value rather than just value represents true market value for purposes of section 11503.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Pub.L. No. 94-210, 90 Stat. 31, 54 (1976) (the 4R Act or the Act). In 1978 the Act was recodified with some differences in language at 49 U.S.C. Sec. 11503. See Southern Ry. Co. v. State Bd. of Equalization, 715 F.2d 522, 523 n. 1 (11th Cir.1983). In light of the parties' agreement and the legislative history of the Act, we shall resolve ambiguities in favor of the original language. See id
 
 
 [2]
 Once a railroad shows that the ratio of assessed value to true market value of its assessed property exceeds by at least five percent the assessed value to true market value ratio of other commercial and industrial property within the assessment jurisdiction, the Act requires the court to enjoin the assessment or collection of discriminatory taxes in any amount. 49 U.S.C. Sec. 11503(b)(2), (c)
 
 
 [3]
 In other words, under the Florida Constitution the property's just value shall constitute the tax base. That figure then must be multiplied by the tax rate to determine the amount of tax owing. In Florida, ad valorem tax is assessed on real property and tangible personal property. Fla.Stat.Ann. Sec. 193.114(1)
 
 
 [4]
 Section 193.011 provides in pertinent part:
 In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
 * * *
 (8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.
 
 
 [5]
 These figures reflect the stipulation of the parties
 
 
 [6]
 With the passage of the 4R Act, Congress capped a seventeen-year effort to equalize railroad property taxes. S. 927, one of several precursors, was virtually a mirror image of section 11503. The legislative history of nearly identical antecedent proposals is unquestionably relevant and material to a complete understanding of the text before the court. Arizona v. Atchison, T. & S.F.R.R. 656 F.2d 398, 404 n. 6 (9th Cir.1981)